# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

Hon. Tom C. King
State Auditor
Austin, Texas

Dear Sir:

Opinion No. 621
Re: Interpretation of S. B. No. 432, Acts 46th Legislature.

We are in receipt of your letter of June 16, 1939, wherein you direct our attention to Senate Bill No. 432 of the 46th Legislature, Regular Session, and request our opinion in response to the following questions:

"(1) Does Section V of the aforementioned act as amended except from the need requirement any school district that has University lands located within its boundaries?

"(2) Does Section V of the aforementioned act as amended except from the need requirement any school district that has land purchased by the Federal Government for National Forests located within its boundaries?

"(3) If your answer to either of the foregoing questions is in the affirmative then what is the meaning of the phrase 'loss sustained' as it appears in Senate Bill No. 432, and what must be considered in computing the 'loss sustained'? Should only the loss sustained by the local maintenance fund or by the bond fund or by both funds be considered in computing the loss?

"(4) If your answer to either question (1) or (2) is in the affirmative then does Senate Bill No. 432, mean that each school district

Gerald C. Mann
Attorney General



90

shall be reimbursed from the Equalization Funds?
Can the amount of the loss sustained, as pro-
vided for in Senate Bill No. 432, legally be
paid out of the monies appropriated for salary
aid to school districts? If so what is the ef-
fective date of Senate Bill No. 432, and could
the payment for losses provided for therein be
paid out of the Salary Aid fund appropriated
for the fiscal year 1938-1939?

"(5) If your answer to the above question is
in the affirmative should these districts which
sustain losses be reimbursed for such losses on
a 100 per cent basis or should these grants be
paid on a pro rata basis as other Salary Aid
grants are paid?

"(6) Can such districts, if a need is shown,
participate further in the Equalization fund, or
are they entitled to receive only an amount equal
to the loss sustained?

"(7) If such school districts may partici-
pate further in the Equalization fund by show-
ing a need, should the amount receivable by
such school districts for loss sustained by vir-
tue of University or Federal Lands being located
within their boundaries be included as revenue
in their budgets before calculating such districts'
budgetary need?

"(8) Senate Bill No. 432, amending section 7
of Chapter 60, Acts of the Second Called Session
of the Forty-fifth Legislature, reads in part as
follows;
" * * *
"Is the spirit, intent and purpose of this
amendment sufficiently set out and covered by
the caption of the Bill so as to render this
amendment constitutional?

"(9) In addition to the foregoing questions,
would payments from funds appropriated for Equali-
zation purposes to reimburse districts for losses
sustained as a result of their inability to tax
certain lands, be in every respect legal?

Said Senate Bill No. 482, including the caption, reads as follows:

"AN ACT AMENDING SECTION 7 OF CHAPTER
63, ACTS OF THE SECOND CALLED SESSION OF
THE FORTY-FIFTH LEGISLATURE, AND DECLAR-
ING AN EMERGENCY.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF
TEXAS:

"Section 1. That Section 7, Chapter 63,
of the Acts of the Second Called Session of
the Forty-fifth Legislature, be, and the same
is hereby amended, so as to hereafter read as
follows:

"Section 7. Federal Government Land
Purchases: Provided the State Superintendent
shall take into consideration in fixing allow-
ances to school district, any loss sustained
by said district by reason of the Federal
Government buying lands for national forests,
and by reason of the location in said districts
of University lands; and the State Superinten-
dent shall be authorized to make allocations to
said district by virtue of losses sustained by
said district by reason of Federal purchase of
lands, the amounts to be fixed by the State
Superintendent based upon existing facts and
circumstances applicable to all other school
districts; and in all exceptions provided
herein the consent of the State Board of Edu-
cation shall be first had and obtained. How-
ever, in districts where there is located
University lands, the State Superintendent
may allow such sum or sums out of the mon-
ies allocated for salary aid which will re-
place the losses sustained by said location
of University lands not to exceed the amount
which such school districts could have re-
ceived had said University lands been taxable
for school purposes, at the valuation assess-
ed for county purposes, regardless of need
shown by budget."



"SEC. 2. The fact that an opinion of the Attorney General's Department has been rendered that does not carry out the intent and purposes of the above Act, and the further fact that the several schools in Texas are in dire need of the funds intended to be provided, creates an emergency and an imperative public necessity that the Rule requiring bills to be read on three several days in each House be suspended, and the same is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted.

"Approved May 8, 1939.
"Effective May 8, 1939."

The opinion of this Department referred to in the emergency clause of S. B. No. 432 is conference opinion No. 3040, dated March 3, 1939, addressed to B. A. Foreman, County Attorney of Upton County, and Fowler Roberts, County Attorney of Reagan County. In that opinion, we held in substance that while the presence of University lands and lands purchased by the Federal Government for National forests in a school district could be considered by the State Superintendent in determining the need of such district, nevertheless any such district would have to meet the need requirements set out in H. B. No. 133, being Ch. 60, Acts Second Called Session, Forty-five Legislature, in order to qualify for aid thereunder. It is quite clear that S. B. No. 432 was enacted as an amendment to Sec. 7 of said H. B. 133 in response to such opinion and to free districts having University lands within their boundaries from the necessity of showing need within the terms of the Act. The amendment to said Section 7 consisted only of the addition of that part of S. B. No. 432 above underscored.

Under the express terms of the amendment an amount not exceeding the tax loss sustained through the presence within its boundaries of University lands may be allocated to a school district without the showing of need such as is required of other districts under the terms of H. B. 133. To that extent your first question is answered in the affirmative. There might be a district containing only a very small amount of such lands. It's "loss" on that account might be only $10.00. Up to the amount of $10.00 need would not have to be shown. However, to receive an amount in excess thereof need would have to be shown within the terms of H. B. No. 133.

The amendment does not affect districts having within their boundaries land purchased by the Federal Government for National forests. As to such districts our conference opinion No. 2949 is still applicable and your second question is answered in the negative.

The tax loss sustained is not limited to any particular tax, but would include loss to the bond as well as to the maintenance fund. Such a loss would be just as definite in the one case as the other and there is nothing in the statute which would justify one to say that only the loss to one particular fund should be considered. This is in answer to your third question.

Senate Bill No. 432 became effective on May 8, 1939. It is an amendment to the appropriation bill providing the "equalization fund" for the 1937-1939 biennium. Nothing stands in the way of such an amendment as to the allocation presently to be made. The sums to be paid to school districts having University lands within their boundaries and which claim the same under said S. B. 432 must be taken from the sums allocated to salary aid out of such equalization fund. This is in response to your fourth question.

We would point out that S. B. 432 does not make it mandatory that the full amount of the "tax loss" be made up to the school district. Such tax loss is merely the maximum amount which may be paid to a district claiming under the terms of S. B. 432 without regard to need. This is as near an answer as we can make to your fifth question.

Addressing ourselves to your sixth question, we construe the provision allowing a grant of a sum not exceeding the tax loss to districts with University lands as fixing the maximum which may be obtained by such a district without regard to need. Stated differently, if a district containing University lands presents an application as any other district, showing a need under the statute in excess of the tax loss sustained on account of having such untaxable lands, the maximum allocation to such a district would be the amount "needed", rather than the tax loss.

As may be gathered from what we have said above we answer your seventh question in the affirmative.

The caption to the bill is sufficient. 39 Tex. Jur.

192; Lowe v. Commissioners' Court, 69 S. W. (2) 153; Katz v. State, 54 S. W. (2) 190 (dicta); State v. McCracken, 42 Tex. 382. Our answer to your eighth question is an affirmative one.

We construe your ninth question to be a general inquiry as to whether S. B. No. 422 is valid. We believe that it is. The power of the Legislature to provide such an equalization fund cannot be questioned. The financial disadvantage of a school district having within its boundaries untaxable lands, upon which families live and have children who must be schooled in and at the expense of the district, is obvious. Classifying such a district separately from and making it eligible for more aid than a district having no such land would be entirely reasonable. It is simply a way of saying that the "need" of such a district should be determined upon a different basis than should be the need of a district not suffering from such a handicap.

A difference, not quite so marked, is also made between districts containing Federal forests and those having University lands. We cannot say that this classification is without reason. Lands belonging to the Federal Government cannot be taxed by the State, or by any of its subdivisions, by amendment to its Constitution or otherwise. On the other hand, by authority of the State Constitution, the University lands are being taxed for county purposes, showing a disposition on the part of the State not to have its lands constitute dead burdens upon the communities in which located. The Legislature has evidently felt that school districts having University lands within their boundaries actually need more help than those without such lands. The same would be true, of course, as to the Federal lands. However, the Legislature has evidently also felt that the same responsibility should not be undertaken as to the action of the Federal Government in purchasing land for National forests. Furthermore, the Legislature may well have found that there were more children coming off the University lands to be schooled at the expense of the tax-paying parts of such districts than are coming from the National forests. Also, the University lands have had no part in the building of school houses, while as a general proposition the lands purchased by the Federal Government aided in such matters for many years while under private ownership.

Our answer to your ninth question, as construed by us, is an affirmative one.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Glenn R. Lewis*

Glenn R. Lewis
Assistant

APPROVED JUL 5, 1939

FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN